DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Huron County Court of Common Pleas which granted summary judgment in favor of appellee, State Farm Insurance Company ("State Farm"), against appellants, Robert and Judy Cordle. For the reasons that follow, we affirm the decision of the trial court.
Robert Cordle was involved in an automobile collision with Thomas J. Jackson, on or about September 27, 1999. Jackson had liability coverage of $50,000 per person/$100,000 per accident. Appellants had uninsured motorist ("UM") coverage through State Farm with the same limits of liability as the tortfeasor's liability policy. Appellants sought UM coverage from State Farm for Robert's bodily injuries and for Judy's consortium claim.
State Farm sought summary judgment on appellants' UM claim. In its April 23, 2001 judgment entry, the trial court held that State Farm's policy denies UM recovery "where the policy limits for such coverage are identical to the liability coverage limits of the tortfeasor * * *." The trial court also held that State Farm's policy "treats a claim for loss of consortium as a derivative claim subject to the per person policy limit." Appellants dismissed their claims against all defendants on May 1, 2001, and appealed the judgment of the trial court granting State Farm summary judgment.
This court notes at the outset that in reviewing a motion for summary judgment, we must apply the same standard as the trial court.[1]
Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law.[2]
Appellants raise the following sole assignment of error:
 "THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT-APPELLEE STATE FARM INSURANCE COMPANY COULD LIMIT ALL CLAIMS RESULTING FROM THE INSTANT ACCIDENT TO A SINGLE PER PERSON LIMITATION OF LIABILITY."
Specifically, appellants argue that consortium claimants have separate claims and, therefore, are subject to their own per person limit of coverage. Appellants also argue that the setoff provision in R.C.3937.18(A)(2) provides for a setoff of the amount actually received by each claimant, rather than a setoff based upon the per person limit of the tortfeasor's liability insurance, i.e., a policy-limit-to-policy-limit analysis.
With respect to whether consortium claimants have separate claims, we note that appellants incorrectly relied upon Schaefer v. Allstate Ins.Co. (1996), 76 Ohio St.3d 553, syllabus. Appellants correctly state thatSchaefer sets forth that each person who is covered by a UM policy has a separate claim for loss of consortium, subject to a separate per person policy limit. Schaefer, however, was superseded by statute.[3]
"[T]he statutory law in effect on the date of issue of each new policy is the law to be applied."[4] At all relevant times to this case, R.C. 3937.18(H) permitted insurance companies to limit all claims arising out of the bodily injury of one person to a single per person policy limit. Effective September 3, 1997, R.C. 3937.18(H) stated as follows:
 "(H) Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section or selected in accordance with division (C) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and for the purpose of such policy limit shall constitute a single claim."
The policy in effect in this case states the following with respect to UM coverage:
"Limits of Liability
 "1. The amount of coverage is shown on the declarations page under `Limits of Liability — U — Each Person, Each Accident'. Under `Each Person' is the amount of coverage for all damages arising out of and due to bodily injury to one person.' Bodily injury to one person' includes all injury and damages to others arising out of and resulting from this bodily injury. Under `Each Accident' is the total amount of coverage, subject to the amount shown under `Each Person', for all such damages arising out of and due to bodily injury to two or more persons in the same accident.
 "2. Any payment made to a person under this coverage shall reduce any amount payable to that person under the bodily injury liability coverage.
"3. The limits of liability are not increased because:
 "a. more than one vehicle is insured under this policy; or
 "b. more than one person is insured at the time of the accident.
 "4. The maximum total amount payable to all insureds
under this coverage is the difference between the `each accident' limits of liability of this coverage and the amount paid to all insureds by or for any person or organization who is or may be held legally liable for the bodily injury.
"Subject to the above, the most we pay for all damages arising out of and due to bodily injury to one person is the lessor of:
 "1. the difference between the `each person' limits of liability of this coverage, and the amount paid for that bodily injury by or for any person or organization who is or may be held legally liable for the bodily injury; or
 "2. the difference between the amount of damages for such bodily injury, and the amount paid for that bodily injury by or for any person or organization who is or who may be held legally liable for the bodily injury." (Emphasis in original.)
We find that the foregoing language unambiguously limits all claims arising out of the bodily injury of one person, including claims for consortium, to a single per person policy limit. Insofar as Robert Cordle was the only insured to suffer bodily injury, we find that appellants can only recover, as their total damages, a single per person limit under their UM coverage.
The issue then becomes, how much of the $50,000 of UM coverage are appellants entitled to recover from State Farm. Appellants argue that the setoff provision in R.C. 3937.18(A)(2) provides for a setoff of the amount actually received by each claimant, rather than a setoff based upon the per person limit of the tortfeasor's liability insurance. For instance, if Robert received $50,000 from the tortfeasor's liability policy for his injuries, leaving nothing for Judy to recover from the tortfeasor for her consortium claim, then Robert would not be entitled to any UM coverage, insofar as he already received $50,000. Judy, however, would be entitled to recover up to $50,000 of UM coverage because she would have received nothing from the tortfeasor. We find appellants' argument to be without merit.
The version R.C. 3937.18(A)(2), relevant to this case, stated as follows:
 "Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added.)
Of significance, we note that prior versions of R.C. 3937.18
incorporated the phrase "amounts actually recovered," whereas, the applicable version includes the phrase "amounts available for payment."
In a case concerning wrongful death claims, the Ohio Supreme Court thoroughly considered the meaning of "amounts available for payment," as set forth in R.C. 3937.18(A)(2).[5] The court stated in Clark:
 "For the purpose of setoff, the `amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)."[6]
The court, however, emphasized that underinsured coverage "shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident."[7] Furthermore, the court specifically rejected a "policy-limits-to-policy-limits" comparison approach for determining whether UM coverage was available. The court noted, "[i]n circumstances involving matching limits and multiple claimants, if an insurer were able to set off payments made to injured parties other than its own insureds, in many if not most instances, an insured would receive no compensation from the tortfeasor and would also be unable to collect underinsured motorist benefits."[8]
Shortly after the decision in Clark, in a single opinion, the Ohio Supreme Court released a series of wrongful death cases concerning the application of the phrase "amounts available for payment."[9] The court again stated that a policy-limit-to-policy-limit analysis was improper in determining whether a claimant was entitled to UM coverage. Rather, in general, the court determined that a UM carrier was not entitled to offset the limits of UM coverage available to its insured against amounts recovered by persons who were not insureds under the UM policy. However, where the insureds under the UM policy received payments from the tortfeasor equal to or in excess of the limits of their UM coverage, the insureds were not entitled to UM benefits.
These rules are best understood through illustration. For example, inLittrell, there were five occupants of the Pratt minivan. The estate of the two occupants who died, and the remaining three occupants, received the entire limits of the tortfeasor's liability policy in divided amounts, totaling $1,300,000. Westfield provided UM coverage with a single policy limit of $500,000 per accident. All five occupants of the Pratt minivan were covered by this UM policy. The court held that the claimants were not entitled to UM coverage under the Westfield policy for the following reason:
 "Had the tortfeasor been an uninsured motorist, the maximum amount available to the five occupants of the Pratt minivan would have been $500,000. The amount available for payment from the tortfeasor was $1,300,000, which was paid to the claimants herein. As this amount exceeds the amount available from the Westfield policy, the occupants of the Pratt minivan are not entitled to underinsured motorist benefits from Westfield."
However, with respect to a grandson of one of the decedents, the court held that he was entitled to UM coverage under his own policy. Ernie Pratt had UM coverage with Allstate for $25,000 per person and $50,000 per accident. Ernie only received $8,000, in wrongful death proceeds, of the $275,000 paid by the tortfeasor, from his grandmother's estate. The court reasoned that had the grandmother's death resulted from an accident with an uninsured motorist, Ernie would have had UM coverage from his Allstate policy up to the $25,000 per person limit. As such, the court determined that Ernie was entitled to UM coverage up to the single, per person limit of his UM policy, less the $8,000 he received from the tortfeasor. The court specifically noted that it would be against the policy reasons set forth by the General Assembly to allow Allstate to offset the settlement from the tortfeasor against the limits of Ernie's UM policy when, in fact, those proceeds had been exhausted by payments to parties other than Allstate's own insured. Additionally, the court noted that Ernie was able to recover UM benefits because he had a separate contract of automobile liability insurance, unrelated to those held by the occupants of the Pratt minivan.
In Stickney v. State Farm Mut. Auto. Ins. Co., also contained as part of the Littrell decision, the court found that no UM coverage was available under the following facts. The insureds' daughter was killed in an automobile accident. The decedent's father, the administrator of the decedent's estate, received $125,000 from the tortfeasor's liability carrier toward his damages resulting from the death of his daughter. The decedent's mother and the other children in the family received none of the settlement proceeds. There were two UM policies insuring the decedent's family with limits of $100,000 per person and $300,000 per accident. In its analysis, the court determined that the wrongful death beneficiaries would only have received a total of $100,000 had their losses resulted from the negligence of an uninsured motorist. As such, the court held that since the amount awarded to the decedent's personal representative for the benefit of the next of kin, $125,000, exceeded the amount which would have been available under the UM policy, $100,000, the wrongful death beneficiaries were not entitled to UM benefits.
Similar to Ernie Pratt's situation above, the final case in Littrell,Karr v. Borchardt, involved UM claimants who, as wrongful death beneficiaries, had received a portion of the tortfeasor's $100,000 liability coverage. Each claimant concerned had their own separate policy, distinct from that of the decedent's. The claimants whose UM coverages exceeded the amounts they recovered from the tortfeasor received UM benefits; whereas, the claimant whose UM coverage was less than the amount she recovered from the tortfeasor received no UM benefits.
In this case, State Farm's policy states that appellants share a single per person limit of UM recovery for their damages. Therefore, if the tortfeasor had been uninsured in this case, appellants would be limited to a maximum recovery of $50,000 in UM benefits. This amount, however, is subject to a setoff in the amount paid by any person or organization who is or may be held legally liable for the bodily injury. The coverage available under the tortfeasor's liability policy is $50,000 per person/$100,000 per accident. Insofar as appellants are the only individuals entitled to recover from the tortfeasor, State Farm is permitted to set off the limits of UM coverage available to appellants against the amounts available for recovery from the tortfeasor.[10]
Because the "amounts actually accessible" to appellants from the tortfeasor equal the limits of their UM coverage, appellants are not entitled to recover UM benefits from State Farm.[11]
We note further that appellants' reliance on Heilman v. ProgressiveIns. Co. (2001), 92 Ohio St.3d 214, and Carroll v. Nationwide Mut. Ins.Co. (2001), 92 Ohio St.3d 215, in their reply brief is misplaced. Appellants argue that State Farm is calling for a limit-to-limit comparison of the tortfeasor's insurance with the policy limits for UM coverage in the State Farm policy, which is inconsistent with the authority of Littrell and Clark, as evidenced by the reversal of Heilmanv. Progressive Ins. Co. (Nov. 9, 2000), Richland App. No. 00CA28, unreported, and Carroll v. Nationwide Mut. Ins. Co. (Nov. 30, 2000), Holmes App. No. 99CA016, unreported. We disagree. In rendering their decisions, both Heilman and Carroll relied on the decision inLittrell,[12] written by the Twelfth District Court of Appeals. TheLittrell appellate court decision was subsequently overturned by the Ohio Supreme Court.[13] Heilman and Carroll were reversed without opinion on the basis of the Ohio Supreme Court decisions of Littrell andClark. As such, Heilman and Carroll provide no precedential value beyond the fact that cases relying on the Twelfth District's decision inLittrell should be reversed. Moreover, due to the facts in this case, a limit-to-limit comparison would result in the same outcome; however, as explained above, appellants are not entitled to UM benefits because (1) R.C.3937.18(H) and State Farm's policy limit appellants' UM benefits to $50,000; (2) besides appellants, no other persons are entitled to any portion of the tortfeasor's liability insurance; (3) the amount available from the tortfeasor is equivalent to appellants' UM coverage; and (4) pursuant to R.C. 3937.18(A)(2), the amount of appellants' UM coverage can be entirely setoff by the amounts actually accessible to appellants from the tortfeasor's liability insurance.
Based on the foregoing, we agree with the trial court that State Farm is entitled to summary judgment against appellants. Accordingly, we find appellants' sole assignment of error not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Huron County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.
[1] Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129.
[2] Civ.R. 56(C).
[3] See Am.Sub.S.B. No. 20; and Davidson v. Uhrig (June 28, 2001), Ross App. No. 00CA2543, unreported.
[4] Wolfe v. Wolfe (2000), 88 Ohio St.3d 246, 250, citing, Ross v.Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281.
[5] Clark v. Scarpelli (2001), 91 Ohio St.3d 271.
[6] Id. at syllabus.
[7] Id. at 273-274.
[8] Id. at 279.
[9] Littrell v. Wigglesworth, Stickney v. State Farm Mut. Auto. Ins.Co., Karr v. Borchardt (2001), 91 Ohio St.3d 425.
[10] See Littrell, supra.
[11] See Clark, supra at syllabus; and Littrell, supra.
[12] Littrell v. Wigglesworth (Mar. 13, 2000), Butler App. No. CA99-05-092 and CA99-08-141, unreported.
[13] Littrell v. Wigglesworth (2001), 91 Ohio St.3d 425.