[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 425.]

LITTRELL, ADMR., ET AL., APPELLANTS, *v.* WIGGLESWORTH, ADMR., ET AL.;

WESTFIELD INSURANCE COMPANY ET AL., APPELLEES.

STICKNEY, APPELLANT, ET AL., *v.* STATE FARM MUTUAL AUTOMOBILE

INSURANCE COMPANY, APPELLEE, ET AL.

KARR, ADMR., ET AL., APPELLANTS, *v.* BORCHARDT; PROGRESSIVE INSURANCE

COMPANY, APPELLEES.

[Cite as *Littrell v. Wigglesworth*, 2001-Ohio-87.]

*Insurance—Motor vehicles—Mandatory offering of uninsured and underinsured motorist coverage—"Amounts available for payment" language in R.C. 3937.18(A)(2), for the purpose of setoff, construed.*

(Nos. 00-745 and 00-801—Submitted January 30, 2001—Decided May 23, 2001.)

APPEAL from and CERTIFIED by the Court of Appeals for Butler County, Nos. CA99-05-092 and CA99-08-141.

(No. 98-2445—Submitted January 30, 2001—Decided May 23, 2001.)

APPEAL from the Court of Appeals for Richland County, No. 98 CA 7.

ON RECONSIDERATION.

(Nos. 99-219, 99-223 and 99-224—Submitted January 30, 2001—Decided May 23, 2001.)

APPEAL from the Court of Appeals for Seneca County, Nos. 13-98-33, 13-98-35 and 13-98-34.

ON RECONSIDERATION.

———————————

SYLLABUS OF THE COURT

For the purpose of setoff, the "amounts available for payment" language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by

an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier). *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 744 N.E.2d 719, followed and applied.

———————————

**DOUGLAS, J.**

*Littrell v. Wigglesworth*

{¶ 1} On February 16, 1997, John Littrell, Jr., was the driver of a motor vehicle that was owned by his mother-in-law, Stella Pratt,[1] when he was involved in a head-on collision with a motor vehicle operated by Jeffrey Wigglesworth. The collision was caused when Jeffrey's automobile allegedly veered left of center and collided with the Pratt vehicle. As a result of the accident, John and Jeffrey were both killed. Stella Pratt, a passenger with John, was also killed. Other occupants of the Pratt vehicle, John's wife, Ina Littrell, and John's children, Dennis and Suzanne, also suffered injuries.

{¶ 2} At the time of the accident, Jeffrey was insured under a policy of automobile liability insurance with State Farm Mutual Automobile Insurance Company ("State Farm") with liability limits of $100,000 per person and $300,000 per accident and a $1 million liability umbrella policy. The Pratt vehicle was insured under a policy of automobile liability insurance with Colonial Penn Insurance Company ("Colonial Penn") that provided uninsured/underinsured motorist coverage with limits of $100,000 per person and $300,000 per accident. Ina Littrell was insured under a policy of automobile liability insurance issued by Westfield Insurance Company ("Westfield") that included uninsured/underinsured motorist coverage in the amount of $500,000 per accident. All five occupants of the Pratt vehicle were insureds under the Westfield policy as family members

_____

1. Cheryl Pratt, Stella's daughter, was a co-owner of the vehicle.

2

residing in the same household and the Colonial Penn policy as the insurer of the Pratt minivan.[2]

{¶ 3} On February 9, 1998, appellants, Ina Littrell, individually and as administrator of the estate of John Littrell, Jr., Linda Littrell, as guardian of Dennis and Suzanne Littrell, and Naomi Gadberry, as administrator of the estate of Stella Pratt, filed personal injury and wrongful death claims, in the Court of Common Pleas of Butler County, against Nancy Wigglesworth, as administrator of the estate of Jeffrey Wigglesworth. Appellants also sought underinsured motorist benefits under the Colonial Penn and Westfield policies. The complaint further sought underinsured motorist proceeds for James Littrell, John, Jr.'s brother, who had underinsured motorist coverage with Preferred Risk Mutual Insurance Company, and for Ernie Pratt, Jr., Stella Pratt's grandson, who had underinsured motorist coverage with Allstate Insurance Company. The trial court granted summary judgment in favor of the defendant insurance companies.

{¶ 4} On appeal, the Court of Appeals for Butler County affirmed the judgment of the trial court. The court of appeals subsequently found its decision to be in conflict with two decisions of the Second District Court of Appeals, *Estate of Fox v. Auto-Owners Ins. Co.* (June 12, 1998), Montgomery App. No. 1456, unreported, 1998 WL 309212, and *Berry v. Przyborowski* (Nov. 19, 1999), Miami App. No. 99-CA-21, unreported, 1999 WL 1043880.

{¶ 5} This cause is now before this court upon our determination that a conflict exists (case No. 00-801), and pursuant to the allowance of a discretionary appeal (case No. 00-745).

*Stickney v. State Farm Mut. Auto. Ins. Co.*

{¶ 6} On January 20, 1996, Jennifer R. Stickney was a passenger in an automobile driven by Eric Semon. Jennifer was killed as a result of injuries she

---

2. In its opinion, the court of appeals also confirms that all occupants in the Pratt vehicle are covered insureds for purposes of the Westfield and Colonial Penn policies.

sustained when Semon lost control of the vehicle. On December 2, 1996, appellant, Scott A. Stickney, Jennifer's father and the administrator of her estate, settled with the tortfeasor's insurer for $125,000.

{¶ 7} At the time of the accident, Scott, his wife, Cynthia Stickney, another daughter, Gina Stickney, and son, Scott Stickney, Jr., were insureds under two policies of automobile liability insurance with appellee State Farm. Each policy provided uninsured/underinsured motorist coverage with limits of $100,000 per person and $300,000 per occurrence. On April 25, 1997, appellant, along with surviving family members, brought a declaratory judgment action against appellee seeking uninsured/underinsured motorist benefits under the State Farm policies. Both sides submitted motions for summary judgment. On January 20, 1998, the trial court granted summary judgment in favor of State Farm. An appeal was filed, and on October 19, 1998, the Richland County Court of Appeals affirmed the judgment of the trial court.

{¶ 8} On November 16, 1998, appellant filed a notice of appeal with this court. On May 24, 2000, we vacated the judgment of the court of appeals and remanded this matter to the trial court for further proceedings. *Stickney v. State Farm Mut. Auto. Ins. Co.* (2000), 88 Ohio St.3d 504, 727 N.E.2d 1286. On August 2, 2000, we granted a motion for reconsideration solely to address the issue presented in appellant's second proposition of law and held this matter for a decision in case Nos. 00-745 and 00-801, *Littrell v. Wigglesworth. Stickney v. State Farm Mut. Auto. Ins. Co.* (2000), 89 Ohio St.3d 1471, 732 N.E.2d 1001.

*Karr v. Borchardt*

{¶ 9} On July 8, 1996, Helen Beddow was a passenger in an automobile driven by her husband, Andrew. Helen was injured when Andrew's vehicle and a vehicle driven by Elizabeth Borchardt collided. Helen subsequently died as a result of her injuries.

4

**{¶ 10}** Helen was survived by Andrew and four adult children, Ginger Karr, Vicki Husk, John Beddow, and Sharon Sumpter. On January 3, 1997, wrongful death and survival claims were filed in the Court of Common Pleas of Seneca County against Borchardt on behalf of appellants, Ginger Karr, Vicki Husk, and John Beddow.[3] The complaint also sought a declaration that appellants were entitled to recover underinsured motorist benefits from their respective automobile liability insurance policies.

**{¶ 11}** At the time of the accident, Borchardt was insured under a policy of automobile liability insurance with Westfield Insurance Company, with policy limits of $100,000 per person and $300,000 per occurrence. Ginger Karr was insured through a policy of automobile liability insurance issued by Progressive Insurance Company, which provided underinsured motorist coverage benefits of $12,500 per person and $25,000 per accident. Vicki Husk had a policy of automobile liability insurance issued by Allstate Insurance Company, which provided underinsured motorist coverage of $100,000 per person and $300,000 per accident. John Beddow had an automobile liability insurance policy issued by State Farm that included underinsured motorist coverage with limits of $50,000 per person and $100,000 per accident. Appellants' claims against Borchardt were settled for the limits of Borchardt's policy, and Westfield paid $100,000 to the estate of Helen Beddow.[4] The trial court subsequently granted motions for summary judgment in favor of appellees, Allstate Insurance, Progressive Insurance, and State Farm Insurance. The Court of Appeals for Seneca County affirmed the judgments of the trial court.

---

3. The remaining surviving beneficiaries, Andrew Beddow and Sharon Sumpter, are not parties to the *Karr* appeals.

4. The limit of liability of Borchardt's policy with Westfield Insurance Company was $100,000 per person and $300,000 per occurrence. While there is no verification in the record before us, the parties do not dispute that $200,000 was paid to the other injured passengers in the Beddow vehicle.

**{¶ 12}** On January 29, 1999, appellants, Ginger Karr (case No. 99-219), Vicki Husk (case No. 99-223), and John Beddow (case No. 99-224) filed notices of appeal with this court. On May 24, 2000, we vacated the judgment of the court of appeals and remanded this matter to the trial court for further proceedings. *Karr v. Borchardt* (2000), 88 Ohio St.3d 535, 728 N.E.2d 362. On August 2, 2000, we granted a motion for reconsideration solely to address the issue presented in appellants' third proposition of law and held this matter for a decision in case Nos. 00-745 and 00-801, *Littrell v. Wigglesworth*. *Karr v. Borchardt* (2000), 89 Ohio St.3d 1471, 732 N.E.2d 1002.

I. Statutory Setoff Against Underinsured Motorist Coverage

**{¶ 13}** On October 20, 1994, the General Assembly enacted Am.Sub.S.B. No. 20 ("S.B. 20"), which amended R.C. 3937.18, that section of the Revised Code requiring the mandatory offering of uninsured and underinsured motorist coverage. These appeals involve the S.B. 20 amendments to R.C. 3937.18(A)(2), which requires liability insurance policies to provide the following[5]:

"Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured

---

5. There have been two subsequent amendments to R.C. 3937.18(A)(2) since the enactment of S.B. 20. See 147 Ohio Laws, Part II, 2373; 2000 Sub.S.B. No. 267, effective September 21, 2000. However, those changes were minor, and the language of R.C. 3937.18(A)(2) under consideration here has remained unchanged.

motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those *amounts available for payment* under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added.)

{¶ 14} In *Stickney*, the question is whether, in a claim for underinsured motorist benefits, the term "amounts available for payment" in R.C. 3937.18(A)(2) should be construed to mean those amounts *actually received* by the insured from the tortfeasor's automobile liability insurance coverage. In *Karr*, essentially the same issue is framed as whether the limits of a claimant's underinsured motorist coverage are compared to the limits of the tortfeasor's automobile liability coverage or whether they are compared to the amounts actually received by a claimant from the tortfeasor's liability policy. Finally, in *Littrell*, the Butler County Court of Appeals certified the following question for our consideration: "Whether R.C. 3937.18[(A)(2)] precludes recovery merely because the insured's underinsured motorist coverage limits are identical to or less than the tortfeasor's liability limits when, due to the presence of multiple claimants, the insured is unable to recover the tortfeasor's limits."

{¶ 15} The setoff provision of R.C. 3937.18(A)(2) was amended by S.B. 20 by the addition of this sentence: "The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

{¶ 16} We recognize that *Stickney* has not been briefed. However, the issue before the court has been fully briefed in *Karr* and *Littrell*. In addition, the *Littrell* case was presented in oral argument. Further, this same issue has been fully briefed and argued in *Clark*.

**{¶ 17}** In accordance with our holding in *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 744 N.E.2d 719, "[f]or the purpose of setoff, the 'amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." *Id.* at syllabus.

**{¶ 18}** In *Clark*, we stated that the original purpose of underinsured motorist coverage was to ensure that persons injured by an underinsured motorist would receive at least the same amount of total compensation as they would have received had they been injured by an uninsured motorist. *Id*. at 275, 744 N.E.2d 719, citing *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 389, 18 OBR 440, 443, 481 N.E.2d 272, 274-275, disapproved on other grounds in *Cole v. Holland* (1996), 76 Ohio St.3d 220, 667 N.E.2d 353. We noted that " 'it would make no sense for this court to reach the absurd result that an injured party is better off when struck by an uninsured tortfeasor than by a person who possesses liability insurance.' " *Clark*, 91 Ohio St.3d at 275, 744 N.E.2d at 725, quoting *Cincinnati Ins. Co. v. Phillips* (1990), 52 Ohio St.3d 162, 165, 556 N.E.2d 1150, 1153. We further emphasized that pursuant to R.C. 3937.18(A)(2), as amended by S.B. 20, underinsured motorist coverage was not intended to be excess insurance to the tortfeasor's liability coverage and that the statutory language indicated that a person injured by an underinsured motorist should never be afforded greater coverage than that which would be available had the tortfeasor been uninsured. *Clark*, 91 Ohio St.3d at 276, 744 N.E.2d at 725.

**{¶ 19}** In light of the reasoning concerning R.C. 3937.18(A)(2) set forth in *Clark*, the matters before us can now be fully and properly resolved. We now proceed to apply the law pronounced therein to each of these appeals.

II. *Littrell v. Wigglesworth*

{¶ 20} Appellants contend that to determine the setoff against the underinsured motorist coverage in a situation involving multiple claimants,[6] R.C. 3937.18(A)(2) requires a comparison of the amounts available for payment to each insured from the tortfeasor. Appellants argue that the statutory language does not permit underinsured motorist carriers to set off the total amounts paid to all other injured claimants but merely allows a setoff of the amounts each insured has received from the tortfeasor.

{¶ 21} The tortfeasor, Jeffrey Wigglesworth, had $1,300,000 in available liability coverage through State Farm, all of which was tendered and accepted in settlement of all claims against Wigglesworth's estate and State Farm. According to appellants, the entire $1,300,000 was allocated to the five occupants of the Pratt vehicle. The estate of John Littrell, Jr., received $415,000, the estate of Stella Pratt received $275,000, Ina Littrell received $460,000 on her personal injury claim, and Dennis and Suzanne Littrell each received $75,000 for their personal injury claims.

{¶ 22} Colonial Penn, which provided automobile liability insurance for the Pratt minivan, has been dismissed from this appeal pursuant to a settlement agreement of the affected parties. Preferred Risk, the automobile liability insurer for James Littrell, John, Jr.'s brother, has also been dismissed by agreement. Therefore, the only policies remaining under consideration are Ina Littrell's Westfield policy and Ernie Pratt, Jr.'s Allstate policy.

A. Westfield Policy

{¶ 23} The Westfield policy insured all five occupants of the Pratt minivan and provided underinsured motorist coverage with a single policy limit of $500,000 per accident. Had the tortfeasor been an uninsured motorist, the maximum amount

6. In our continuing review, case by case, of the issues surrounding the application and accessibility of uninsured and underinsured motorist coverage, it would appear that, in most cases, the application of the R.C. 3937.18(A)(2) "amounts available for payment" language arises when *both* multiple parties *and* multiple policies are involved.

available to the five occupants of the Pratt minivan would have been $500,000. The amount available for payment from the tortfeasor was $1,300,000, which was paid to the claimants herein. As this amount exceeds the amount available from the Westfield policy, the occupants of the Pratt minivan are not entitled to underinsured motorist benefits from Westfield.[7]

## B. Allstate Policy

{¶ 24} Ernie Pratt, on the other hand, is entitled to underinsured motorist benefits. Ernie Pratt, the grandson of decedent Stella Pratt, filed a claim for underinsured motorist benefits through his automobile liability policy with Allstate. The Allstate policy provided underinsured motorist coverage with limits of $25,000 per person and $50,000 per accident.

{¶ 25} Stella Pratt was struck and killed by a tortfeasor possessing $1,300,000 in liability coverage. Allstate argues for a strict limits-to-limits approach, wherein the limits of the tortfeasor's liability policy are compared to the limits of the underinsured motorist claimant's automobile policy, which would preclude Ernie from any recovery of underinsured motorist benefits because the tortfeasor's liability limits far exceeded the stated limits of Ernie's policy with Allstate. Allstate argues that a limits-to-limits comparison satisfies both the language of and public policy behind R.C. 3937.18(A)(2).

{¶ 26} While we rejected this contention in *Clark*, the fallacy of Allstate's position is further illustrated by Ernie Pratt's underinsured motorist claim. According to the parties, Ernie received, from the $275,000 paid to the estate of Stella Pratt, $8,000 in wrongful death proceeds, presumably as a next of kin. See R.C. 2125.02(A)(1). Had Stella Pratt's death resulted from an accident with an uninsured motorist, Ernie would have had uninsured motorist coverage from his

---

7. This case illustrates well the *multiple*-policies issue. If each of the five occupants of the Pratt minivan had had a separate policy of insurance, then each would have had coverage under his or her own policy up to the single policy limit less any sums received from the tortfeasor's policy.

Allstate policy up to the $25,000 per-person limit. Under a comparison of the limits, Ernie would not be entitled to recover underinsured motorist benefits. Thus, a strict policy-limits-to-limits comparison is untenable, as clearly it would give Ernie more coverage had Stella been killed in an accident caused by an uninsured motorist.

**{¶ 27}** Furthermore, while it is true that the tortfeasor's automobile liability proceeds far exceeded the limits of Ernie's Allstate policy, the entire amount of the tortfeasor's policy has been allocated for the wrongful death and personal injuries suffered by the five occupants of the Pratt minivan. Allstate would have us apply the entire $1,300,000 settlement from the tortfeasor as a setoff against the limits of Ernie's automobile liability policy when, in fact, those proceeds have been exhausted by payments to parties other than Allstate's own insured, Ernie. For the policy reasons set forth by the General Assembly and explained both in *Clark* and herein, we reject this argument of Allstate.

**{¶ 28}** Moreover, it is only because Ernie has a separate automobile liability policy through Allstate that he is able to recover underinsured motorist benefits. Ernie was not an insured under either the Westfield or Colonial Penn policies that provided underinsured motorist coverage for the occupants of the Pratt minivan. As a result, if Ernie did not have a separate contract of automobile liability insurance with Allstate, he would have no claim at all for underinsured motorist coverage regardless of the settlement received from the tortfeasor or the policy limits provided in the Westfield or Colonial Penn policies.

**{¶ 29}** Therefore, because Ernie did receive $8,000 out of the proceeds paid by the tortfeasor for the wrongful death of Stella Pratt, that is the amount available for payment from the tortfeasor. Ernie is, therefore, entitled to underinsured motorist coverage up to the single, per-person limit of his Allstate policy, reduced by the amount received from the tortfeasor.

### III. *Stickney v. State Farm Mut. Auto. Ins. Co.*

**{¶ 30}** Appellant, Scott Stickney, received $125,000 from the tortfeasor's liability carrier toward his damages resulting from the death of his daughter, Jennifer. Scott's wife, Cynthia, and their other children, Gina and Scott, Jr., did not receive any share of the settlement proceeds. Two automobile liability insurance policies, insuring Scott and his family and issued by State Farm with underinsured motorist coverage limits of $100,000 per person and $300,000 per accident, were in effect at the time of Jennifer's accidental death. According to appellant, since Cynthia, Gina, and Scott, Jr., as statutory wrongful death beneficiaries, did not share in the settlement proceeds received from the tortfeasor's liability carrier, they are entitled to recover underinsured motorist benefits from the State Farm policies. State Farm, on the other hand, contends that the $125,000 from the tortfeasor's liability policy was the amount available for payment applicable to all wrongful death claimants and that is the amount that should be set off against the $100,000 per-person limits of the State Farm policies.

**{¶ 31}** In order to determine the amount of underinsured motorist coverage available to the wrongful death beneficiaries, we begin by determining the amount that those beneficiaries would have received had their losses resulted from the negligence of an *un*insured motorist. There apparently is no dispute between the parties concerning the antistacking clause and the single per-person limit provision in the State Farm policies. The trial court granted summary judgment in favor of State Farm, and appellant did not challenge the validity of these clauses on appeal. Thus, had appellant's decedent been killed by an uninsured motorist, the maximum amount that all wrongful death beneficiaries could have recovered in uninsured motorist benefits, according to policy language permitted by R.C. 3937.18(H), would have been the $100,000 per-person limit of the State Farm policy. Pursuant to R.C. 3937.18(A)(2), underinsured motorist coverage is "provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage" had the tortfeasor been uninsured

12

at the time of the accident. The amount awarded to decedent's personal representative for the benefit of the next of kin, $125,000, is the amount available for payment. Since this amount exceeds that which would be available under appellant's uninsured motorist coverage, the wrongful death beneficiaries are not entitled to underinsured motorist benefits from State Farm.

IV. *Karr v. Borchardt*

**{¶ 32}** The parties agree that $100,000 was paid from the tortfeasor's liability carrier to the personal representative of decedent Helen Beddow and distributed equally among the five statutory wrongful death beneficiaries, each receiving $20,000.

**{¶ 33}** The appellants argue that although $100,000 in liability proceeds had been paid to the survivors of the deceased, Helen Beddow, $100,000 was not available for payment *to each insured* but, rather, that amount was available for payment *to all statutory beneficiaries*. Appellants contend that each statutory wrongful death beneficiary received slightly less than $9,000 from the tortfeasor (his or her pro rata share after expenses, attorney fees, and a statutory subrogation lien to Medicare) and that is the "amount available for payment" that should be compared to the policy limits of the underinsured motorist coverage. In contrast, the insurers contend that each statutory beneficiary's share of the liability coverage received from the tortfeasor ($20,000), and not his or her net recovery, is the figure that must be compared to the limits of underinsured motorist coverage for purposes of calculating setoff and determining whether the tortfeasor was underinsured within the meaning of R.C. 3937.18(A)(2). Appellees urge that $20,000 is the amount available for payment and that attorney fees and other expenses should not be taken into consideration. Appellees are correct, with the exception that the pro rata share of the statutory subrogation lien to Medicare should not be charged as part of the setoff. Our explanation of the appropriate calculations for each claimant follows.

**{¶ 34}** As a preliminary matter, we hold that expenses and attorney fees are not part of the setoff equation. Such fees are an expense of an insured and should not act, in order to increase underinsured motorist benefits, to reduce the "amounts available for payment" from the tortfeasor's automobile liability carrier. Conversely, a statutory subrogation lien to Medicare should be considered when determining the amounts available for payment from the tortfeasor. Such a lien is not an expense of an insured.

**{¶ 35}** Appellants claim that the total amount of the statutory subrogation lien to Medicare is $21,698.13. Thus, the charge to each of the five wrongful death beneficiaries for their pro rata share of the Medicare lien is $4,339.63.

A. Ginger Karr

**{¶ 36}** Based on the foregoing, it is apparent that Ginger Karr is not entitled to underinsured motorist benefits. At the time of her mother's fatal accident, Ginger had in effect an automobile liability policy with Progressive that provided underinsured motorist coverage in the amount of $12,500 per person and $25,000 per accident. If the decedent had been killed by an uninsured motorist, Ginger would have had uninsured motorist coverage up to a maximum amount of $12,500. Ginger has received $20,000 from the tortfeasor. After taking into consideration Ginger's pro rata share of the subrogation lien, and subtracting that amount ($4,339.63) from the $20,000 that Ginger recovered from the tortfeasor, Ginger's actual amount recovered was $15,660.37. If the accident had been caused by the negligence of an uninsured motorist, Ginger could not have received more than the $12,500 per-person limit from her Progressive policy. Therefore, Ginger is not entitled to underinsured motorist coverage.

### B. Vicki Husk and John Beddow

**{¶ 37}** However, Vicki Husk and John Beddow are entitled to underinsured motorist coverage from their respective policies. Vicki Husk had underinsured motorist coverage with Allstate Insurance Company with limits of $100,000 per person and $300,000 per accident. Vicki could, therefore, collect up to the $100,000 per-person limit if the accident had been the fault of an uninsured motorist. In comparison, the amount available for payment to Vicki from the tortfeasor's liability carrier was the same as it was to her sister, Ginger Karr, approximately $15,660. As a result, the tortfeasor was underinsured as to Vicki, and Vicki has underinsured motorist coverage up to the per-person limit of her Allstate policy after setting off the amount recovered from the tortfeasor.

**{¶ 38}** John Beddow had an automobile liability insurance policy issued by State Farm that provided underinsured motorist coverage with limits of $50,000 per person and $100,000 per accident. John's recovery from the tortfeasor was approximately $15,660, the amount available for payment to all statutory wrongful death beneficiaries. As John could have collected up to his per-person limit of $50,000 had the tortfeasor been an uninsured motorist, John also is entitled to underinsured motorist coverage. Accordingly, John may collect underinsured motorist benefits up to the per-person limit of his State Farm policy less the amount available for payment from the tortfeasor.

### V. Conclusion

**{¶ 39}** We therefore reverse the judgments of the courts of appeals and remand these matters to the trial courts for further proceedings consistent with this opinion, recognizing, of course, that action taken by the trial courts in *Stickney* and *Karr* based on our previous remand may have been dispositive of these matters.

*Judgments reversed*
*and causes remanded.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 40} Recently, I respectfully dissented from this court's decision interpreting the phrase "amounts available for payment" in R.C. 3937.18(A)(2). See *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 284, 744 N.E.2d 719, 731 (Cook, J., concurring in part and dissenting in part). I predicated my dissent upon the *Clark* majority's having reached and decided an issue that *Clark* did not, and could not, even present. I further noted my view that the *Clark* majority had misconstrued the validity of *Motorists Mut. Ins. Co. v. Andrews* (1992), 65 Ohio St.3d 362, 604 N.E.2d 142, misappropriated authority reserved to the General Assembly, and misapplied R.C. 3937.18(A)(2)'s triggering provision. The majority today repeats these same errors.

## I. Triggering

{¶ 41} By reaching the setoff issue in the consolidated cases, the majority here, as in *Clark*, incorrectly accepts that underinsured motorist coverage has first been triggered. As I explained in my dissent in *Clark*, the General Assembly has superseded the interpretation of the triggering provision to which the majority erroneously adheres.[8] See Section 7, Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I,

_____

8. Section 7, S.B. 20, 145 Ohio Laws, Part I, 238, provides:

"It is the intent of the General Assembly in amending division (A)(2) of section 3937.18 of the Revised Code to supersede the effect of the holding of the Ohio Supreme Court in the October 1, 1993 decision in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500 [620 N.E.2d 809]relative to the application of underinsured motorist coverage in those situations involving accidents where the tortfeasor's bodily injury liability limits are greater than or equal to the limits of the underinsured motorist coverage."

I have previously explained the effect of this uncodified law as follows:

"Given such an explicit expression of legislative intent, I cannot agree that the General Assembly intended to adhere to the *Andrews-Savoie* construction of the triggering provision of R.C. 3937.18(A)(2). Because *Savoie* and *Andrews* contain the same erroneous interpretation of the statute, superseding *Savoie* has the practical effect of superseding *Andrews*. The 'triggering' sentence of R.C. 3937.18(A)(2) should therefore not be interpreted pursuant to the *Andrews-Savoie* 'amount recovered to limits of UIM coverage' comparison. Rather, the uncodified law should be

238; *Clark v. Scarpelli* (2001), 91 Ohio St.3d at 287-288, 744 N.E.2d at 733-734 (Cook, J., concurring in part and dissenting in part). The plain language of the statute mandates a limits-to-limits comparison as opposed to a comparison of the amounts actually recovered to the underinsured motorist policy limits. This limits-to-limits comparison precludes application of underinsured motorist coverage in *Littrell*, *Stickney*, and *Karr*.

### *Littrell*

{¶ 42} In regard to *Littrell*, the majority correctly concludes, albeit using wrong reasoning, that there can be no recovery from the underinsured motorist coverage of Ina Littrell's policy. The majority erroneously concludes, however, that Ernie Platt may recover under his policy. But as the majority acknowledges, when comparing limits to limits, Platt cannot recover "because the tortfeasor's liability limits far exceeded the stated limits of Ernie's policy with Allstate." That is the correct result under the law enacted by the General Assembly. While the majority rejects this interpretation on the basis that "a strict policy-limits-to-limits comparison is untenable," "the role of a court is not to decide what the law *should* say; rather, the role of this court is to interpret what the law says *as it has been written by the General Assembly*—regardless of whether it constitutes sound policy." (Emphasis *sic*.) *Clark*, 91 Ohio St.3d at 291, 744 N.E.2d at 736 (Cook, J., concurring in part and dissenting in part), citing *Cablevision of the Midwest, Inc. v. Gross* (1994), 70 Ohio St.3d 541, 544, 639 N.E.2d 1154, 1156.

### *Stickney*

{¶ 43} The majority correctly determines that there is no underinsured recovery in *Stickney*, but again uses the same wrong reasoning. It is not that the amount actually recovered by Scott Stickney offsets any applicable underinsured

---

viewed as evincing an intent to correct this court's prior, erroneous interpretation of the triggering provision set forth in *Andrews* and *Savoie* and to reinforce the limits-to-limits comparison that the plain language of the statute warrants." *Clark*, 91 Ohio St.3d at 287-288, 744 N.E.2d at 734 (Cook, J., concurring in part and dissenting in part).

motorist coverage that resolves the question; rather, the fact that the limits of coverage available under the tortfeasor's policy equaled the limits of the underinsured motorist coverage precluded further recovery. Like Platt's underinsured motorist coverage in *Littrell*, Stickney's coverage was never even triggered.

*Karr*

**{¶ 44}** The majority is similarly correct in finding no underinsured recovery but wrong in rationale in regard to Ginger Karr in *Karr*. Although Karr's recovery exceeded her $12,500 per-person policy limit, it is the triggering provision and not the setoff provision of R.C. 3937.18(A)(2) that forecloses recovery. Further, because a limits-to-limits comparison of Borchardt's $100,000/$300,000 liability policy and the respective policies held by Vicki Husk ($100,000/$300,000) and John Beddow ($50,000/$100,000) reveals either equal limits, or in Beddow's case, a higher policy limit, underinsured motorist coverage is not triggered. The majority should not, therefore, have reached the issues of how expenses, attorney fees, and Medicare payments figure in calculating setoff under R.C. 3937.18(A)(2).

II. Setoff

**{¶ 45}** In my dissent in *Clark*, I noted that to regard the phrase "amounts actually recovered" in pre-S.B. 20 R.C. 3937.18(A)(2) as having the same meaning as the phrase "amounts available for payment" in the amended statute "espouses the view that the 1994 amendment to the statute was merely cosmetic, then, as it would have effected no substantive change." *Clark*, 91 Ohio St.3d at 291, 744 N.E.2d at 736-737 (Cook, J., concurring in part and dissenting in part). Because this issue of interpretation was not properly presented in *Clark*, I expressed no opinion as to its ultimate validity. But because the majority has continued to adhere to its erroneous reasoning, I address the issue here so as to clarify just what I assess to be the proper rationale to be applied in those cases in which the issue of setoff actually exists.

**{¶ 46}** Even if these cases *did* present the issue of what amounts the R.C. 3937.18(A)(2) setoff provision contemplates—and even though I agree with the conclusion that the majority reaches—I would not join in the majority's reasoning. This is so because the majority's questionable reliance on *Andrews* is wholly unnecessary. Rather, uncodified law expresses legislative intent to provide for setoff of the amounts actually recovered.

**{¶ 47}** A review of the legislative development of underinsured motorist law reveals that the General Assembly enacted former R.C. 3937.181 in 1980 with the passage of Am.Sub.H.B. No. 22. That statute contained no explicit setoff provision, but incorporated the subrogation provision for uninsured motorist coverage contained in R.C. 3937.18(C). 138 Ohio Laws, Part I, 1458, 1460. That latter section provided that "the insurer * * * is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of [the injured party] against [the tortfeasor]." *Id*. at 1459.

**{¶ 48}** In 1982, the General Assembly passed Am.Sub.H.B. No. 489. This bill repealed R.C. 3937.181 and incorporated reworked underinsured motorist coverage provisions into R.C. 3937.18. The resulting version of R.C. 3937.18(A)(2) provided that the limits of an insured's recovery were to be calculated as follows:

"The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." 139 Ohio Laws, Part II, 2937.

**{¶ 49}** The setoff scheme therefore called for subtracting the *amount paid* to the injured party from the limits of that party's underinsured motorist policy.

{¶ 50} The General Assembly then passed Am.Sub.S.B. No. 20 ("S.B. 20") in 1994. S.B. 20 amended the setoff provision of R.C. 3937.18(A)(2) to read[9]:

"The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." 145 Ohio Laws, Part I, 211.

{¶ 51} I find that the uncodified law found in Section 8 of S.B. 20, 145 Ohio Laws, Part I, 204, 238, answers just what the phrase "amounts available for payment" is intended to mean. That section provides:

"It is the intent of the General Assembly in amending division (A)(2) of Section 3937.18 of the Revised Code to declare and confirm that the purpose and intent of the 114th General Assembly in enacting division (A)(2) of section 3937.18 in Am. H.B. 489 was, and the intent of the General Assembly in amending section 3937.18 of the Revised Code in this act is, to provide an offset against the limits of the underinsured motorist coverage of those amounts available for payment from the tortfeasor's bodily injury liability coverage." *Id*. at 238.

{¶ 52} With this the General Assembly stated that it intended the phrase "amounts available for payment" in the amended statute to have the same effect and purpose as the phrase "amounts actually recovered" in the prior version of the statute. This expression of intent resolves the interpretation issue without resort to the majority's contorted deductions from the *Andrews* case.[10]

---

9. The General Assembly also amended R.C. 3937.18 in 1997 (147 Ohio Laws, Part II, 2372), 1999 (S.B. No. 57), and 2000 (Sub.S.B. No. 267). These amendments did not alter the setoff provision of R.C. 3937.18(A)(2).

10. "As the majority concedes, *Andrews* interpreted the triggering provision of (A)(2) and not the setoff provision. While *Andrews* construed 'the limits of coverage available for payment' in the triggering provision of subsection (A)(2) to mean 'the *amount actually available for payment*'— essentially the same as 'those amounts actually recovered' in the language of the former setoff sentence of the subsection—this interpretation was erroneous both then and now. *Andrews*, 65 Ohio St.3d at 366, 604 N.E.2d at 145-146. The [*Andrews*] rationale has not only been superseded; moreover, it was predicated on an unsupported perception of public policy and was contrary to the

### III. Conclusion

**{¶ 53}** For the foregoing reasons, I disagree with the majority's deciding an issue of underinsured motorist law not presented by the cases at bar. Were the setoff question actually presented, the relevant uncodified law would lead me to concur only in the syllabus language, with the exception of its reliance on the erroneous *Clark*. Because I would affirm the courts of appeals, I respectfully dissent.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

————————————

*Elk & Elk Co., L.P.A., Thomas L. Dettelbach* and *Todd O. Rosenberg,* for appellants in case No. 98-2445.

*Meyers, Hentemann & Rea Co., L.P.A., Henry A. Hentemann* and *J. Michael Creagan,* for appellee in case No. 98-2445.

*Murray & Murray Co., L.P.A., Dennis E. Murray, Sr., W. Patrick Murray, Charles M. Murray* and *Steven C. Bechtel*, for appellants in case Nos. 99-219, 99-223 and 99-224.

*Meyers, Hentemann & Rea Co., L.P.A., Henry A. Hentemann* and *J. Michael Creagan,* for appellee Progressive Insurance Company in case No. 99-219.

*Eastman & Smith, Ltd.,* and *John D. Willey, Jr.*, for appellee Allstate Insurance Company in case No. 99-223.

*Gallagher, Bradigan, Gams, Pryor & Littrell, L.L.P.,* and *James R. Gallagher; Kitch, Drutchas, Wagner & Kenney, P.C., John S. Wasung* and *Susan Healy Zitterman*, for appellee State Farm Mutual Automobile Insurance Company in case No. 99-224.

———

plain language of R.C. 3937.18(A)(2)." *Clark*, 91 Ohio St.3d at 291-292, 744 N.E.2d at 737 (Cook, J., concurring in part and dissenting in part).

*Waite, Schneider, Bayless & Chesley* and *Arthur D. Rabourn; Casper & Casper* and *Margaret H. McCollum,* for appellants in case Nos. 00-745 and 00-801.

*Benjamin, Yocum & Heather, L.L.C., Timothy P. Heather* and *Charles F. Hollis III,* for appellee Allstate Insurance Company in case Nos. 00-745 and 00-801.

*Droder & Miller Co., L.P.A.,* and *W. John Sellins*, for appellee Westfield Insurance Company in case Nos. 00-745 and 00-801.

*Murray & Murray Co., L.P.A., Steven C. Bechtel, W. Patrick Murray* and *Charles M. Murray,* urging reversal for *amicus curiae* Ohio Academy of Trial Lawyers in case Nos. 00-745 and 00-801.

*Elk & Elk Co., L.P.A.,* and *Todd O. Rosenberg,* urging reversal for *amicus curiae* Cleveland Academy of Trial Lawyers in case Nos. 00-745 and 00-801.

————————————