OPINION
Plaintiffs-appellants, Elizabeth L. Allen, individually and as executor of the estate of Robert J. Allen, deceased, and Scott T. Allen, appeal from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motions of defendants-appellees, Amica Mutual Insurance Company ("Amica") and Midwestern Indemnity Company ("Midwestern"). Plaintiffs assign a single error:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT[S]-APPELLEES AMICA MUTUAL INSURANCE COMPANY AND MIDWESTERN INDEMNITY COMPANY AND DENYING THE MOTION FOR SUMMARY JUDGMENT OF PLAINTIFFS-APPELLANTS, AND HOLDING THAT UNDERINSURED MOTORIST COVERAGE IS SUBJECT TO A SET-OFF BY THE AMOUNT OF THE TORTFEASOR'S LIABILITY INSURANCE EVEN THOUGH THE AMOUNT "AVAILABLE FOR PAYMENT" FROM THE TORTFEASOR'S LIABILITY INSURER WAS REDUCED BY MULTIPLE CLAIMS.
Because plaintiffs are entitled to no further recovery from either defendant, the trial court properly granted summary judgment to defendants.
On July 15, 1999, plaintiffs filed a complaint, alleging that on August 17, 1997, Robert J. Allen died as a result of personal injuries he received in an automobile accident of July 16, 1997, caused by the negligence of Natalie C. Moore. At the time of his death, Allen was survived by next-of-kin, including his wife Elizabeth, his son Scott, and his daughter Aimee. Asserting both wrongful death and survivorship claims in their complaint, plaintiffs attached a copy of the order of the probate judge granting Moore a release on payment by her automobile liability insurance carrier of the limits of her policy, $100,000, to plaintiffs and Aimee.
At the time of the accident, plaintiffs had underinsured motorist coverage through a policy with Amica and a policy with Midwestern. By their complaint, plaintiffs sought additional compensation under those policies. Plaintiffs further sought underinsured motorist coverage under their homeowner's policy issued by Midwestern.
Each defendant filed a motion for summary judgment. Plaintiffs responded to the motions with a memorandum contra as well as their own motion for partial summary judgment. After the parties had completed full briefing on the motions, the trial court granted the motions of Amica and Midwestern and denied plaintiffs' motion for partial summary judgment. Plaintiffs appeal, asserting the trial court erred in denying them additional coverage pursuant to their policies with Amica and Midwestern.
After the parties had completed briefing the issues before this court and had argued the matter orally, the Supreme Court issued three decisions which dispose of the issues raised by this appeal. Initially, we are required to determine how much coverage is afforded under each of the two automobile insurance policies at issue. Amica's policy stated:
Limit of Liability
 A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.
The declarations page shows a limit of $100,000 per accident.
Similarly, the insurance policy issued by Midwestern stated:
 The limit of liability shown in the Declarations for this coverage applies as follows:
 1. The limit for "each person" is the maximum amount we will pay as damages arising out of "bodily injury" sustained by one person in one accident. "Bodily injury" to one person includes all injury and damages to others resulting from this "bodily injury."
The per person limit under the policy is $100,000.
Pursuant to Am.Sub.S.B. No. 20 ("S.B. 20"), R.C. 3937.18(H) was amended to provide:
 Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section or selected in accordance with division (C) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident. (Emphasis added.)
Given the legislative permission to collectively subject all claims to a single claim limit, the policies at issue validly do so. Clark v. Scarpelli (2001), 91 Ohio St.3d 271, 282-284.
The next issue presented is whether plaintiffs are entitled to any portion of the $100,000 of underinsured coverage provided by the policies issued by defendants Amica and Midwestern.
R.C. 3937.18(A)(2), as amended by S.B. 20, provides:
 Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured. (Emphasis added.)
While defendants urge that we compare the policy limits of underinsured coverage to the policy limits of the tortfeasor's liability coverage in determining whether any underinsured coverage is available to plaintiffs, the Supreme Court in Scarpelli resolved that issue, stating:
 For the purpose of setoff, the "amounts available for payment" language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier). Id. at syllabus.
As the Supreme Court explained, the "amounts available for payment" language requires "a comparison between the amounts that are actually accessible to the injured claimant from the tortfeasor's automobile liability insurance carrier and the injured claimant's own underinsured motorist coverage limits." Id. at 276.
Application of that principle is complicated by the multiple claimants in this action. The Supreme Court addressed that issue in Littrell v. Wigglesworth (2001), 91 Ohio St.3d 425. The Supreme Court explained the principle through several cases pending before it, but because of its similarity to this case, we note in particular the Westfield policy which had a single policy limit of $500,000 per accident. Because all five occupants of the minivan involved in the accident were insured under the Westfield policy, the court aggregated the amount all five insureds had received from the tortfeasor's liability carrier and compared that to the $500,000 limit under the Westfield policy. The court concluded the insureds were not underinsured because they had received in the aggregate $1,300,000 from the tortfeasor's liability company, an amount well in excess of the limits of their Westfield policy.
Similarly, here all plaintiffs and their next-of-kin were insured under the same policy with Amica and the same policy with Midwestern. Accordingly, the amount of their recoveries is aggregated to determine whether the amount available for payment is less than $100,000, the amount of their underinsured coverage. Because the tortfeasor paid plaintiffs and their next-of-kin $100,000, the amount available for payment is equal to the amount of coverage under each policy. Accordingly, under the recent pronouncement of Littrell, plaintiffs are not underinsureds and are not entitled to recover from either Amica or Midwestern pursuant to the underinsured provisions of those policies.
Plaintiffs' complaint also sought underinsured coverage pursuant to Goettenmoeller v. Meridian Mut. Ins. Co. (June 25, 1996), Franklin App. No. 95APE11-1553, unreported. In Davidson v. Motorists Mut. Ins. Co. (2001), 91 Ohio St.3d 262, syllabus, the Supreme Court held that "a homeowner's insurance policy that provides limited liability coverage for vehicles that are not subject to motor vehicle registration and that are not intended to be used on a public highway is not a motor vehicle liability policy and is not subject to the requirement of former R.C.3937.18 to offer uninsured and underinsured motorist coverage." Because the Midwestern homeowner's policy applies to vehicles not intended to be used on a public highway and not subject to motor vehicle registration, the language of the policy falls squarely under the syllabus of the Ohio Supreme Court's decision in Davidson. Accordingly, the Midwestern homeowner's policy does not provide underinsured coverage to plaintiffs pursuant to R.C. 3937.18.
Lastly, plaintiffs contend that whether the court agrees with any of plaintiffs' other arguments, plaintiffs are "still entitled to recover under the Midwestern auto policy due to the policy language which expressly provides such coverage." (Appellants' brief, p. 15.) In particular, plaintiffs point to the set-off provision of the Midwestern policy that provides:
 The limit of liability payable under this Part [the uninsured and underinsured motorist coverage part] will be reduced by:
 1. Payments made for the same damages by the owner, operator or insurer of the "uninsured motor vehicle" or "underinsured motor vehicle" or an organization which may be legally liable;
 2. Payments made under Part A Liability Coverage of this policy. * * * (Emphasis added.) (Midwestern Policy, endorsement GRE-PA-10 [03-95], p. 2.)
Premised on that language, plaintiffs contend the Midwestern policy does not "provide a reduction of coverage (set-off) by the amount of the tortfeasor's policy limits. The policy merely provides that there is a reduction of coverage if the payment by the tortfeasor is for the `same damages' as the claim under the underinsured motorist coverage." (Appellants' brief, p. 16.) Contending they do not seek the "same damages" paid by the tortfeasor, plaintiffs assert no set-off occurs, and they are entitled to payment from Midwestern.
Initially, plaintiffs' interpretation of the clause renders it virtually meaningless: under plaintiffs' argument, anything already paid could never be the "same damages" and thus a set-off would seldom, if ever, occur. Contrary to their argument, plaintiffs seek damages arising out of the accident, and the tortfeasor's liability insurance company has contributed $100,000 in payment of those damages. The set-off provision by its terms applies to accomplish that which is required under the provisions of R.C. 3937.18(A)(2). ("The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability * * * insurance policies covering persons liable to the insured").
For the foregoing reasons, plaintiffs' single assignment of error is overruled and the judgment of the trial court is affirmed.
 ___________________ BRYANT, P.J.
KENNEDY and DESHLER, JJ., concur.