OPINION
{¶ 1} Plaintiffs-appellants, Larry and Betty Masenheimer, appeal a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Allstate Insurance Company, in an uninsured/underinsured motorist ("UM/UIM") coverage case.
 {¶ 2} In November 2000, Larry Masenheimer, then an Ohio State Highway Patrol Trooper, was sitting in his cruiser in a crossover on I-75 watching traffic. At the same time, defendants-appellees, George Disselkamp and Mark Underwood, were racing northbound on I-75 at an excessive rate of speed. Disselkamp was then working for defendant-appellee, Colorado Prime Sales Corp. While racing, Underwood's vehicle hit the rear of Disselkamp's vehicle. Disselkamp lost control of his vehicle and collided with Masenheimer's cruiser, causing serious injuries to Masenheimer.
 {¶ 3} At the time of the accident, Masenheimer had a personal automobile liability policy with Allstate which provided UM/UIM coverage limits of $100,000 per person and $300,000 per accident. While Underwood was an uninsured motorist, Disselkamp was insured personally and through his employer. Disselkamp's personal automobile insurance had limits of $12,500 per person and $25,000 per accident. In March 2001, appellants filed a complaint against Disselkamp, Underwood, and Allstate seeking, inter alia, UM/UIM benefits from Allstate under the policy. The complaint alleged that because appellants were entitled to judgments against Disselkamp and Underwood, Allstate was obligated to indemnify them for the limits of their policy.
 {¶ 4} Allstate filed a motion for summary judgment, arguing it was entitled to a setoff of any judgment rendered against Disselkamp. Appellants, in turn, filed a motion for summary judgment, arguing that Allstate was not entitled to a setoff until appellants had actually been paid by either Disselkamp and/or anyone else legally responsible. The motion stated that they had not been paid by Underwood, Disselkamp, or Colorado Prime Sales. Appellants filed a second motion for summary judgment, asking the trial court to find that Disselkamp was negligent in the operation of his vehicle and that his employer, Colorado Prime Sales, was vicariously liable as a matter of law. Finding that there was a genuine issue of material fact "in that [Disselkamp and Colorado Prime Sales] dispute the direct and proximate cause of the accident[,]" the trial court denied appellants' second motion for summary judgment.
 {¶ 5} On May 6, 2002, the trial court entered a consent judgment against Underwood for $1,200,000. The trial court found that with the exception of Underwood, no other party was bound by the consent judgment. On May 17, 2002, the trial court denied appellants' first motion for summary judgment and granted summary judgment in favor of Allstate as follows: "Allstate is entitled to a setoff from its potential uninsured/underinsured motorist coverage obligations to [appellants] of any judgment or settlement amounts that [appellants] obtain against * * * Disselkamp and/or * * * Colorado Prime Sales." The trial court subsequently denied appellants' motion for reconsideration. Appellants timely filed this appeal.
 {¶ 6} On appeal, appellants raise three assignments of error in which they challenge the trial court's decision to grant summary judgment in favor of Allstate. At the heart of their arguments is appellants' claim that Allstate is not entitled to a setoff. Appellants contend that pursuant to the terms of its policy and R.C. 3937.18, Allstate is required to pay them first and then pursue its right of subrogation against the tortfeasors and Colorado Prime Sales. Appellants also argue that under R.C. 3937.18 and the policy, Allstate may be allowed to defer payment only until after liability policies arising out of underinsured motorist claims have been exhausted. Appellants contend that since their claim against Underwood is based upon an uninsured motorist claim, and since Underwood has consented to a judgment against him, Allstate has no right of setoff as to that claim. That is, Allstate cannot delay paying appellants as to that claim based upon the potential liability of Disselkamp and/or Colorado Prime Sales.
 {¶ 7} Allstate, in turn, argues that the trial court did not err by finding that it has a right of setoff from its potential UM/UIM coverage obligations of any amount received by appellants from Disselkamp. Allstate contends that the trial court was correct, as there is no provision in the policy requiring Allstate to pay appellants first and then seek to recover from Disselkamp. Rather, Allstate contends that "the policy clearly indicates the order in which payment is to be made — first the reduction is computed based upon what Appellants recover from the fully insured, joint tortfeasor, then Allstate pays the difference (if any)[.]" Allstate also disagrees that its right of setoff only applies to underinsured motorist claims.
 {¶ 8} Subrogation and setoff are two conceptually distinct rights. The right of subrogation is in the nature of an assignment of a claim or right. Blackburn v. Hamoudi (Sept. 18, 1990), Franklin App. No. 89AP-1102, at *5. Under subrogation, Allstate succeeds to the rights of its insureds, appellants, against the tortfeasors. By contrast, the right of setoff is a right only between Allstate and appellants. A setoff provision in an insurance policy is typically relied upon by an insurer to reduce or eliminate payments made to the insured in the first instance. An insurer may, however, also be granted a right to set off payments made by the tortfeasor after the insurer has already made its payment to the insured. Id. at *4. The right of setoff is not subject to the particular rule of subrogation which prohibits an insurer from recovering payments it made until its insured is fully compensated for his injuries. Id. at *5.
 {¶ 9} Applicable to the case are the following provisions from Allstate's policy, titled "Uninsured Motorists Insurance — Uninsured Motorists Insurance for Bodily Injury:"
 {¶ 10} "If a premium is shown on the Policy Declarations for Uninsured Motorists Insurance, we will pay those damages which an insured person * * * is legally entitled to recover from the owner or operator of an uninsured auto * * * because of bodily injury sustained by an insured person[.]
 {¶ 11} "The bodily injury must be caused by accident and arise out of the ownership, maintenance, or use of an uninsured auto. * * *
 {¶ 12} "An Uninsured Auto is [1] a motor vehicle which has no bodily injury liability bond or insurance policy in effect at the time of the accident[,] * * * [5] an underinsured motor vehicle which has liability protection in effect and applicable at the time of the accident in an amount equal to or greater than the amounts specified for bodily injury liability by the financial responsibility laws of Ohio, but less than the limits of liability for Uninsured Motorists Insurance shown on the Policy Declarations."
 {¶ 13} "* * *
 {¶ 14} "Any amount payable to or for an insured person * * * under this coverage will be reduced by all amounts paid by the owner or operator of the underinsured auto or anyone else legally responsible. This includes all sums paid under the bodily injury liability coverage of this or any other auto policy.
 {¶ 15} "We are not obligated to make any payment for bodily injury under this coverage which arises out of the ownership, maintenance or use of an underinsured motor vehicle until after the limits of liability for all liability protection in effect and applicable at the time of the accident have been fully and completely exhausted by payment of judgmentsor settlements." (Emphasis added.)
 {¶ 16} Also applicable to the case at bar is the version[1] of R.C. 3937.18 as amended in September 2000:
 {¶ 17} "(A)(2) * * * The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."
 {¶ 18} In Clark v. Scarpelli, 91 Ohio St.3d 271, 2001-Ohio-39, the Ohio Supreme Court was asked to interpret the "amounts available for payment"[2] language in R.C. 3937.18(A)(2). The supreme court held that "[f]or the purpose of set-off, the `amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." Id. at syllabus. "In other words, it means those amounts the insured actually recovers from a tortfeasor whose liability policy is subject to the claim of the insured[.]" Id. at 276. See, also, Littrell v. Wigglesworth, 91 Ohio St.3d 425, 2001-Ohio-87.
 {¶ 19} Upon reviewing Allstate's policy and R.C. 3937.18(A)(2) as interpreted by the supreme court, we hold that the trial court properly granted summary judgment in favor of Allstate. The policy clearly grants Allstate a right of setoff. We find that there are no genuine issues of material fact as to when Allstate can exercise its right of setoff. Pursuant to Clark, Littrell, and the terms of the policy, we find that appellants must first recover from the tortfeasors by way of settlements and/or judgments. Once appellants actually recover money from the tortfeasors, and thus, once the amount of recovery is known, Allstate can then exercise its right of setoff, and then pay appellants, if at all, pursuant to the terms of the policy.
 {¶ 20} With regard to appellants' claim that the right of setoff only applies to underinsured motorist claims, we find that this argument is not well-taken. In Nationwide Mut. Ins. Co. v. Baker (1993),99 Ohio App.3d 433, an insurer brought a declaratory judgment action to determine whether it was entitled to a setoff under the UM provision of its policy of the amounts already paid to the estate of the insured. The estate argued that while R.C. 3937.18(A)(2) specifically allowed for setoff for UIM coverage, its companion provision on UM coverage, R.C.3937.18(A)(1), did not. The estate also argued that since the insurer had made no payments under its UM coverage, it was not entitled to a setoff. The First Appellate District held that the insurer was entitled to a setoff, finding "so long as the policy language is clearly stated and the set-off provision does not lead to any inconsistent or unfair result, any payment made, whether by an uninsured tortfeasor, an underinsured tortfeasor, or one or more joint tortfeasors, may be setoff." Id. at 436. Appellants' three assignments of error are accordingly overruled.
Judgment affirmed.
VALEN, P.J., and YOUNG, J., concur.
[1] For the purposes of determining the scope of coverage of UM/UIM claims, the statutory law in effect at the time of entering into the contract for automobile liability insurance controls the rights and duties of the contracting parties. See Ross v. Farmers Ins. Group ofCos. (1998), 82 Ohio St.3d 281. Although it is not apparent from the record when appellants originally purchased UM/UIM coverage from Allstate, the record shows that they renewed their policy in 2000. This renewal provided insurance coverage for the period of October 10, 2000 through April 10, 2001. R.C. 3937.18 was amended effective September 21, 2000. The accident occurred in November 2000. We therefore find that the version of R.C. 3937.18 effective September 21, 2000 is the applicable version in the case at bar.
[2] We are mindful that in Clark, the supreme court was called upon to interpret R.C. 3937.18(A)(2) as first modified by Senate Bill 20, and not as amended effective September 21, 2000. However, the language of R.C.3937.18(A)(2) as applied to the case at bar is identical to the language of R.C. 3937.18(A)(2) which was under consideration in Clark.