DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant Nationwide Insurance Company ("Nationwide") appeals from the decision of the Summit County Court of Common Pleas, which granted Appellee Allstate Insurance Company's ("Allstate"), motion for summary judgment. We reverse and remand.
 {¶ 2} This case stems from a motor vehicle accident in which James Ridgeway ("Ridgeway") was injured by Richard Wheeland on August 7, 2001. Ridgeway alleged that Wheeland negligently operated his vehicle, causing it to collide with a vehicle owned by the Pierson family. Inside the Pierson vehicle was Ridgeway, James Pierson and Ashley Roberts. As a result of the accident, James Pierson was killed and Ridgeway was injured.
 {¶ 3} Ridgeway filed his personal injury action against Richard Wheeland, James Wheeland, Nationwide and Allstate for damages and underinsured motorists ("UIM") coverage on September 18, 2003 in Case No. 2003-09-5366. Ridgeway's case was consolidated with a prior Summit County case which involved the same claims and parties and arose out of the same motor vehicle accident. The only claim in this case is Ridgeway's claim for UIM coverage against Nationwide and Allstate.
 {¶ 4} At the time of the accident, Wheeland had bodily injury liability coverage of $65,000 with Allstate. Ridgeway had $25,000 in UIM coverage from Allstate and the Pierson family had $100,000 in UIM coverage from Nationwide. According to the Pierson's Nationwide policy, all occupants of the Pierson vehicle qualified as insureds, but only Ridgeway qualified as an Allstate insured.
 {¶ 5} In June 2004, Ridgeway settled his claim against Wheeland for $20,000 and accepted $80,000 from Nationwide as an advance UIM payment. Ridgeway then assigned his pending UIM claim against Allstate to Nationwide. Nationwide took the subsequent position that Allstate and Nationwide UIM coverage should be pro-rated based upon the excess other insurance clauses found in each company's policy. Therefore, Nationwide seeks to recover $16,000 from Allstate of the $80,000 in UIM benefits that Nationwide advanced to Ridgeway.
 {¶ 6} Nationwide filed its answer to Ridgeway's complaint on October 27, 2003, and Allstate filed an answer and cross-claim on February 24, 2004. Nationwide filed a motion for summary judgment regarding Ridgeway's UIM claims against Allstate and Nationwide on April 2, 2004, and Allstate responded with a brief in opposition. The trial court denied Nationwide's motion for summary judgment on August 9, 2004.
 {¶ 7} On September 29, 2004, Nationwide filed a motion for reconsideration, requesting the trial court reconsider the set-off amount it used to deny Nationwide's motion for summary judgment. Allstate then filed its own motion for summary judgment on October 6, 2004. On May 11, 2005, the trial court issued a decision and order which stated that Nationwide's motion for reconsideration and its related briefing involved identical issues to those which were raised in its motion for summary judgment, which the court had previously denied in August. The trial court granted Allstate's motion for summary judgment.
 {¶ 8} Appellant appealed, asserting one assignment of error for our review. Appellee, Allstate, has asserted two cross assignments of error.
 ASSIGNMENT OF ERROR
"The trial court erred and improperly granted summary judgment to the Appellee, Allstate, and denied summary judgment to the Appellant Nationwide, by finding that Allstate was entitled to a complete set-off of its underinsured motorists['] coverage, and thereby finding that Allstate did not share UIM coverage on a pro-rata basis with Nationwide."
 {¶ 9} In its sole assignment of error, Nationwide argues that the trial court erred in granting summary judgment to Allstate. Specifically, Nationwide argues that the Allstate and Nationwide policies should share the $80,000 in UIM coverage advanced to Ridgeway on a pro-rated basis because both of the excess "other insurance" clauses were activated and because UIM coverage pro-rates between Allstate and Nationwide, the two carriers should share a single setoff amount. We agree.
 {¶ 10} Appellate courts consider an appeal from summary judgment under a de novo standard of review. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. Unlike an abuse of discretion standard, a de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711. Thus, this Court applies the same standard as the trial court, viewing the facts of the case in a light most favorable to the non-moving party. Civ.R. 56(C); Norris v. Ohio Std. Oil Co. (1982),70 Ohio St.2d 1, 2.
 {¶ 11} Summary judgment is proper under Civ.R. 56 when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion, and that conclusion is adverse to the non-moving party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327.
 {¶ 12} To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Civ.R. 56(E) provides that after the moving party has satisfied its burden of supporting its motion for summary judgment, the non-moving party may overcome summary judgment by demonstrating that a genuine issue exists to be litigated for trial. State ex rel. Zimmermanv. Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 13} In the instant case, the trial court granted Allstate's motion for summary judgment on the basis that Wheeland, the tortfeasor, was not an underinsured motorist pursuant to Ridgeway's Allstate policy, and the court concluded that the issues of pro-rata and setoff were moot. We feel that a discussion of the issues raised in Nationwide's motion for summary judgment is warranted, however.
UM/UIM Coverage
 {¶ 14} Allstate asserted that because Wheeland's Allstate policy was for $65,000, and Ridgeway's UIM coverage was for $25,000, Ridgeway's decision to accept $20,000 precluded him from subsequently seeking UM/UIM benefits. The trial court agreed, citing R.C. 3937.18(C) as support:
"Underinsured motorist coverage, * * * shall provide protection * * * where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage."
Thus, the trial court concluded that because Wheeland's Allstate policy of $65,000 was not less than Ridgeway's Allstate policy of $25,000, under the requirements of R.C. 3937.18(C), Ridgeway's policy was not required to provide UIM coverage to Ridgeway. The trial court also concluded that because there was no requirement to provide UIM coverage, the pro-rata and setoff issues were moot.
 {¶ 15} We disagree with this reasoning. After reviewing the trial court's decision and order, it is the conclusion of this Court that the trial court appears to have misinterpreted the "available for payment" language in the statute and performed a policy-to-policy comparison instead. Therefore, the trial court did not take into account the question posed to the Ohio Supreme court in Littrell v. Wigglesworth (2001), 91 Ohio St.3d 425, in which the Court considered whether R.C. 3937.18(C) "precludes recovery merely because the insured's [UIM] coverage limits are identical to or less than the tortfeasor's liability limits, when, due to the presence of multiple claimants, the insured is unable to recover the tortfeasor's limits." Id. at 429. TheLittrell Court went on to explain:
"Allstate argues for a strict limits-to-limits approach, wherein the limits of the tortfeasor's liability policy are compared to the limits of the underinsured motorist claimant's automobile policy, which would preclude [claimant] from any recovery of underinsured motorist benefits because the tortfeasor's liability limits far exceeded the stated limits of [claimant's] policy with Allstate. Allstate argues that a limits-to-limits comparison satisfies both the language of and public policy behind R.C. 3937.18." Id. at 431-432.
The Court noted that they had rejected this contention inClark v. Scarpelli (2001), 91 Ohio St.3d 271, and continued:
"Furthermore, while it is true that the tortfeasor's automobile liability proceeds far exceeded the limits of [claimant's] Allstate policy, the entire amount of the tortfeasor's policy has been allocated for the wrongful death and personal injuries suffered by the [occupants of the vehicle]. Allstate would have us apply the entire [policy limits] settlement from the tortfeasor as a setoff against the limits of [claimant's] automobile liability policy when, in fact, those proceeds have been exhausted by payments to parties other than Allstate's own insured, [the claimant]. For the policy reasons set forth by the General Assembly and explained in both Clark and herein, we reject this argument of Allstate. * * * Therefore, because [claimant] did receive [an amount] out of the proceeds paid by the tortfeasor[,] that is the amount available for payment from the tortfeasor. [Claimant] is, therefore, entitled to underinsured motorist coverage up to the single, per-person limit of his Allstate policy, reduced by the amount received from the tortfeasor." Littrell, 91 Ohio St.3d at 432.
 {¶ 16} In the present case, the trial court did not conduct an "available for payment" analysis or take into consideration the fact that there were multiple claimants who received portions of the tortfeasor's policy. Instead, it strictly did a limits-to-limits comparison of the two policies when it compared Wheeland's Allstate policy of $65,000 to Ridgeway's Allstate policy of $25,000, and concluded that because Ridgeway's policy was less than Wheeland's policy, no UIM coverage was available to Ridgeway.
 {¶ 17} However, this Court notes that an examination of the distribution of payments from Wheeland's policy among the multiple claimants is necessary before concluding whether UIM coverage exists. Wheeland's policy was distributed as follows: $40,000 for Pierson's claim of wrongful death; $20,000 to Ridgeway for his claims; and $5,000 to Ashley Roberts for her claims. Based upon this distribution, Wheeland's policy limit was exhausted. Therefore, under the analysis of Littrell as discussed above, $20,000 is the amount "available for payment" to Ridgeway from Wheeland's policy. As this amount is less than his own Allstate underinsured policy, we find that Ridgeway is entitled to UIM coverage.
"Excess" Insurance Clauses
 {¶ 18} We now turn to the issue of the excess insurance clauses contained within the policies of Wheeland and Ridgeway. The Nationwide policy UIM endorsement, states:
"[UIM] COVERAGE AGREEMENT
"YOU AND A RELATIVE
"* * *
"OTHER PERSONS
"We will also pay compensatory damages, including derivative claims, which are due by law to other persons who suffer bodily injury while occupying:
"Your auto;
"* * *
"OTHER INSURANCE
"* * *
"If an insured other than you or a relative is a named inured or an insured household member for uninsured motorists or underinsured motorists coverage under another policy, our coverage is excess to any such coverage. Our coverage will apply only in the amount by which the limit of coverage under this policy exceeds the limit of coverage of the policy . . . under which such insured is a named insured or insured household member."
The Allstate UIM endorsement, in part, states:
"[UIM] ENDORSEMENT
"If there is Other Insurance
"If the insured person was in . . . a vehicle which you do not own which is insured for uninsured motorists . . . coverage under another policy, then coverage under Uninsured Motorist Insurance in Part 3 of this policy will be excess."
Reviewing the policies, it is clear that the provision for "other person" in the Nationwide policy applies to Ridgeway's claim, as Ridgeway was not a relative of James Pierson. As Ridgeway has his own Allstate policy, Nationwide's coverage is considered "excess." Both parties agree that the above policy provisions were triggered by the accident. The question we are now faced with is deciding which policy is primary and which is secondary.
 {¶ 19} In Buckeye Union Ins. Co. v. State Auto Mutl. Ins.Co. (1977), 49 Ohio St.2d 213, 215-16, the Ohio Supreme Court stated:
"Buckeye also contends that, where neither policy is primary `by its terms,' because each includes coverage and excess clauses for the same risk, `the policy which specifically covers a vehicle and its driver' provides `primary coverage.' Buckeye correctly asserts that, by definition, neither of two policies containing mutually repugnant excess clauses is primary. Indeed, it is because neither policy is primary where two policies contain conflicting excess clauses that courts have had to resort to judicial formulae, including the `specific versus general' theory espoused by Buckeye to apportion liability. We are not persuaded, however, by Buckeye's suggestion that we hold State Auto primarily liable for the risk covered in the excess clauses on the ground that the rest of State Auto's policy is more specific than its own. Buckeye's argument is based on `circular reasoning.' In State Farm Ins. Co. v. Home Indemnity Inc. Co.
(1970), 23 Ohio St.2d 45, this court pointed out that before one policy `can ride as excess insurance, the other policy must be made to walk as primary insurance.' Since there can be no primary insurance of the risk where there are conflicting excess clauses, the excess clause a fortiori cannot be a valid means of establishing only `secondary' liability. For us to look to otherprovisions within the insurance policies in order to find oneinsurer primarily liable and give effect to an excess clausewhich has been neutralized, as a matter of logic, by theconflicting excess clause of the other policy, is to apportionliability on the basis of criteria unrelated to the excessclauses themselves and to run the same hazards of arbitrarinessand disregard for the insurer's intent that lead us to reject theprimary tortfeasor doctrine. Therefore, we decline to accept Buckeye's second contention." (Internal citation omitted.) (Emphasis added.)
We recognize that Buckeye dealt with liability insurance, but we see no reason to depart from this rationale concerning the Court's unwillingness to make an arbitrary decision between two conflicting policies.
 {¶ 20} Allstate urges us to depart from Buckeye, relying onCurran v. State Automobile Mutl. Ins. Co. (1971),25 Ohio St.2d 33. A review of Curran, however, finds it silent on accepting the principle of "insurance follows the car" as a blanket rule. In fact, Curran does not fully differentiate between liability and UIM coverage, simply noting as follows:
"The insurance providing coverage to the owner, being primary in such instance, and available to all the occupants of the car, should be pro-rated among all the injured occupants according to their loss to the extent of its limits." Id. at 39.
At no point in Curran does the Court simply adopt the "insurance follows the car rule" as a blanket rule for establishing liability. Further, we find that to the extent that such a result may be inferred, as Allstate has done, such an interpretation is untenable following the Court's subsequent decision in Buckeye. As a result, we follow the Buckeye
rationale.
 {¶ 21} This Court sees no merit in arbitrarily finding that one policy is primary and one is secondary, and we will not place the burden on one insurance carrier over the other when both policies, by their plain language, provide coverage. We note that this Court could adopt a rule that "insurance follows the driver." Adoption of such a rule, however, would invoke the same arbitrary values that Allstate has urged this Court to adopt. We are not inclined to undertake such an endeavor into arbitrary decision-making.
 {¶ 22} In Motor Vehicle Cas. Co. v. Atlantic Nat. Ins. Co.
(1967), 374 F.2d 601, the Fifth Circuit Court of Appeals stated:
"It rested on the assumption that each of the policies contained an `excess' other insurance clause which, indeed, Motor Casualty did as to rented vehicles, and Atlantic had at one time. With two excess clauses, the law steps in, apparently abhorring a stalemate as much as nature abhors a vacuum, to pronounce the dubious fiat that, of all things, the parties intended by such exculpatory language to pick up a liability verbally excluded so that what was `excess' becomes pro rata. But simple as it is, the theory collapses if in one policy there is neither an `excess' clause or any like `other insurance' clause to match against a second policy having an `excess' clause.'" Id. at 603.
In the instant matter, we are confronted with such a stalemate. Both UIM provisions cover the same risk, the risk of property and bodily injury, and both were triggered. Rather than judicially abrogating the "excess" language of the Nationwide policy to find the Allstate policy secondary, we find that the appropriate remedy is that the policies be enforced pro-rata.
Pro-Rata Sharing
 {¶ 23} Allstate's argument is that both carriers are entitled to separate set-offs of the full amount of funds, $20,000, recovered by Ridgeway from Wheeland. Nationwide further contends that the split of liability should be split on a 4:1 basis, based on the policy limits of the $100,000 Nationwide policy and the $25,000 Allstate policy. Nationwide advanced $80,000 of the $100,000 policy to Ridgeway, and therefore seeks to recover $64,000, while Allstate is responsible for $16,000.
 {¶ 24} We begin by noting that such an approach to setoff would result in $40,000 being setoff when Ridgeway had only recovered $20,000. However, the trial court has yet to address the issue of pro-rating the coverages, having rendered such an issue moot by virtue of its finding that no UIM coverage existed from the Allstate policy. As the trial court has not fully addressed such an issue, we remand the matter for the trial court to consider Nationwide's arguments regarding the proper calculation of the parties' respective pro-rata liabilities.
 CROSS-ASSIGNMENT OF ERROR I
"Nationwide lacks standing to obtain a judgment against Allstate relating to coverage provided under the Allstate policy."
 {¶ 25} In their first cross-assignment of error, Allstate argues that because Nationwide did not file an action for a declaratory judgment, it lacked standing to assert its arguments at the trial court. Allstate contends that because Nationwide was a co-defendant with them in the Ridegeway action, Nationwide was precluded from asserting any claim against Allstate except through a cross-claim.
 {¶ 26} In its August 9, 2004, decision and order, the trial court noted that Allstate had raised the issue of Nationwide's standing due to a lack of cross-claim, but found Allstate's argument lacked merit because Nationwide had supplemented their unsigned version of an assignment form from Ridgeway to Nationwide with a signed assignment of claim executed by Ridgeway in favor of Nationwide, and against Allstate. The trial court noted that because Allstate had not objected to the supplement or affidavit, Allstate's argument as to standing and capacity was moot. We agree.
 {¶ 27} The Ohio Supreme Court in Inter Ins. Exchange ofChicago Motor Club v. Wagstaff (1945), 144 Ohio St. 457, 460, recognized the general rule that "an assignee * * * of a claim stands in the shoes of the assignor * * * and succeeds to all the rights and remedies of the latter." (Emphasis omitted.) In this instant case, Ridgeway has clearly assigned his rights to Nationwide, who was not seeking a determination that coverage existed, but who was seeking damages. Thus, the trial court did not err when it determined that Allstate's standing argument was moot.
 CROSS-ASSIGNMENT OF ERROR II
"Nationwide owes primary underinsured motorist coverage to James Ridgeway because he was operating a vehicle insured by Nationwide."
 {¶ 28} Our discussion of Nationwide's sole assignment of error and UIM coverage renders this cross assignment of error moot, and we decline to address it. See App.R. 12(A)(1)(c).
 {¶ 29} Appellant's sole assignment of error is sustained, and we reverse the judgment of the Summit County Court of Common Pleas. Appellee's first cross-assignment of error is overruled, and we decline to address the second cross-assignment of error. The matter is remanded for action further consistent with these proceedings.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee, Allstate Insurance .Co.
Moore, J., Reader, J., Concur.
(Reader, J., retired, of the Fifth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)