DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Allstate Insurance Co. ("Allstate") has appealed from the judgment of the Summit County Court of Common Pleas which determined its pro rata insurance obligation to be $16,000. This Court reverses.
 I {¶ 2} James Ridgeway was injured in an automobile accident by Richard Wheeland on August 7, 2001. As a result, Ridgeway filed suit alleging that Wheeland had negligently operated his vehicle, causing it to collide with a vehicle owned by the Pierson family. Ridgeway filed his personal injury action against *Page 2 
Richard Wheeland, James Wheeland, Appellee Nationwide Insurance Co. ("Nationwide") and Allstate for damages and underinsured motorists ("UIM") coverage on September 18, 2003 in Case No. 2003-09-5366. Ridgeway's case was consolidated with a prior Summit County case which involved the same claims and parties and arose out of the same motor vehicle accident. The only claim made by Ridgeway in the consolidated case was Ridgeway's claim for UIM coverage against Nationwide and Allstate.
 {¶ 3} At the time of the accident, Wheeland had bodily injury liability coverage of $65,000 with Allstate. Ridgeway had $25,000 in UIM coverage from Allstate and the Pierson family had $100,000 in UIM coverage from Nationwide.
 {¶ 4} In June 2004, Ridgeway settled his claim against Wheeland for $20,000 and accepted $80,000 from Nationwide as an advance UIM payment. Ridgeway then assigned his pending UIM claim against Allstate to Nationwide. Nationwide took the subsequent position that Allstate and Nationwide UIM coverage should be pro-rated based upon the excess other insurance clauses found in each company's policy. Accordingly, Nationwide sought to recover $16,000 from Allstate of the $80,000 in UIM benefits that Nationwide advanced to Ridgeway.
 {¶ 5} On October 6, 2004, Allstate moved for summary judgment, asserting that no UIM coverage existed under its policy. The trial court agreed and granted Allstate's motion for summary judgment. On appeal, this Court *Page 3 
reversed, finding that Allstate was obligated to provide UIM coverage under the facts presented. Pierson v. Wheeland, 9th Dist. No. 22736,2006-Ohio-1316. This Court then found that the provisions in the Nationwide and Allstate policies were mutually repugnant and that liability must be prorated between the two. Id. at ¶ 24. We, however, declined to advise the trial court on the proper method of prorating the liability. Id.
 {¶ 6} Upon remand, the trial court accepted Nationwide's argument and prorated liability based upon the total coverage amounts of each policy ($100,000/$25,000). As a result, the trial court found that Nationwide was obligated in the amount of $64,000 (80% of the liability as Nationwide provided 80% of the total policy amounts) and Allstate was responsible for $16,000 (20% of the total liability). Allstate has timely appealed from the trial court's judgment, raising one assignment of error for review.
 II Assignment of Error "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN HOLDING THAT ALLSTATE IS REQUIRED TO PAY NATIONWIDE $16,000 AS ALLSTATE'S PRO RATA SHARE OF THE UNDERINSURED MOTORIST INSURANCE (UIM) SETTLEMENT THAT NATIONWIDE ADVANCED, WHEN, IF ALLSTATE WERE THE SOLE UIM CARRIER, ITS OBLIGATION WOULD ONLY BE $5,000."
 {¶ 7} In its sole assignment of error, Allstate has argued that the trial court erred in finding its obligation to be $16,000. Specifically, Allstate has contended *Page 4 
that the trial court used an improper formula to determine the parties' pro rata obligations. We agree.
 {¶ 8} Initially, we note that the parties disagree about the applicable standard of review of this matter. Appellant has asserted that the matter is one of contract interpretation and must, therefore, be reviewed de novo. However, the matter at hand does not involve interpretation of the respective insurance policies. Such an interpretation was completed in the first appeal of this matter. The question before this Court is whether the trial court used the proper method of prorating the parties' obligations in furtherance of the declaratory relief sought.
 {¶ 9} The Ohio Supreme Court has held as follows:
 "[A] determination as to the granting or denying of declaratory relief is one of degree. Although this court might agree or disagree with that determination, our decision must be whether such a determination is reasonable." Bilyeu v. Motorists Mut. Ins. Co. (1973), 36 Ohio St.2d 35, 37.
Moreover, the Ohio Supreme Court has recently reiterated that in the context of the dismissal of a declaratory action the proper standard of review is an abuse of discretion standard. See Mid-American Fire andCas. Co. v. Heasley, 113 Ohio St.3d 133, 2007-Ohio-1248, at ¶ 13-14
(rejecting the argument that the dismissal of a declaratory action should be reviewed de novo and "reaffirming] that declaratory judgment actions are to be reviewed under an abuse-of-discretion standard."). However, Bilyeu and Heasley both discussed that the question of *Page 5 
whether or not a declaratory action should be entertained is necessarily one of degree and therefore invokes the discretion of the trial court.
 {¶ 10} In the instant matter, we are not confronted with a discretionary decision. Given the resolution of the first appeal of this matter, the trial court was obligated to apportion liability between Nationwide and Allstate. Furthermore, the Ohio Supreme Court set forth the objectives that must be achieved through prorating liability. Accordingly, there is no discretion in how liability may be apportioned. Rather, we are confronted with a pure legal question: under the undisputed facts of this action, what is the proper method of apportioning liability. Accordingly, we review the trial court's decision de novo.
 {¶ 11} The parties agree that Buckeye Union Ins. Co. v. State AutoMutl. Ins. Co. (1977), 49 Ohio St.2d 213, should inform this Court's decision. However, they disagree regarding the proper result underBuckeye. In Buckeye, the Ohio Supreme Court held as follows:
 "The majority rule is to prorate liability according to the amount of coverage provided by each insurer. This method of proration `assures indemnification for the insured up to the maximum amount of coverage afforded by each policy,' and it takes into consideration the respective liabilities that the two insurers would have incurred had there not been other insurance. Concurrent Coverage, supra (65 Colum.L.Rev. 319), at page 330. We hold, therefore, that where two insurance policies cover the same risk and both provide that their liability with regard to that risk shall be excess insurance over other valid, collectible insurance, the two insurers become liable in proportion to the amount of insurance provided by their respective policies." (Footnote omitted.) Id. at 218. *Page 6 
Nationwide has asserted that the above provision is dispositive and obligated the trial court to determine the parties' pro rata shares based upon the policy limits of the respective policies. We disagree.
 {¶ 12} Nationwide is correct in its assertion that there are numerous cases applying Buckeye and utilizing a policy limits approach to prorate obligations. See e.g., Westfield Ins. Co. v. Nationwide Mut. Ins.Co. (1993), 99 Ohio App.3d 114. However, none of the cases cited by Nationwide answer the question before this Court: whether it is appropriate to use a policy limits approach for proration of UIM obligations when there exists an amount to setoff against those obligations as a result of payments from a tortfeasor. We answer this question in the negative. Accordingly, we recognize that we are the first Court in this State to address the precise issue at hand.
 {¶ 13} Allstate provided UIM coverage in the amount of $25,000. Ridgeway received $20,000 from the tortfeasor. As such, it is undisputed that Allstate's obligation would have been capped at $5,000 if no other insurance existed. This is true because Allstate's policy provided that the amount available under its policy would be reduced by any amount received from the tortfeasor. Nationwide, however, has argued that deducting the $20,000 Ridgeway received from the policy amounts available in both policies amounts to an impermissible double setoff. In support, Nationwide references this Court's passing remark from the first appeal in this matter wherein we stated "We begin by noting that such an *Page 7 
approach to setoff would result in $40,000 being setoff when Ridgeway had only recovered $20,000." Pierson at ¶ 24. However, in its prior decision this Court went on to state:
 "However, the trial court has yet to address the issue of pro-rating the coverages, having rendered such an issue moot by virtue of its finding that no UIM coverage existed from the Allstate policy. As the trial court has not fully addressed such an issue, we remand the matter for the trial court to consider Nationwide's arguments regarding the proper calculation of the parties' respective pro-rata liabilities." Id.
Thus, this Court's prior reference did not substantively address the propriety of this type of setoff.
 {¶ 14} Under the facts herein, setting off $20,000 from each policy does not affect the total amount recoverable by Ridgeway. In fact, Ridgeway long ago received full compensation for his injuries and the issue of setoff impacts him in no manner. As such, there is no reason in equity to refuse to enforce the provisions of both policies that mandate reducing the amount of coverage available by the amount received by the insured from the tortfeasor.
 {¶ 15} We now examine the propriety of the trial court's use of the total policy limits to apportion liability. The plain language ofBuckeye makes clear that proration must take into account "the respective liabilities that the two insurers would have incurred had there not been other insurance." Buckeye, 49 Ohio St. at 218. Further,Buckeye provides that insurers "become liable in *Page 8 
proportion to the amount of insurance provided by their respective policies." (Emphasis added.) Id.
 {¶ 16} It is undisputed that following setoff of the amount received from the tortfeasor, Allstate's policy provided insurance in the amount of $5,000 and Nationwide's policy provided insurance in the amount of $80,000. As such, rather than calculating a percentage using the total policy limits ($25,000/$125,000), Allstate's pro rata share of liability should have been calculated as a percentage of the total policy amountsavailable ($5,000/$85,000 = 5.88%). Nationwide's pro rata share of liability should have been calculated as 94.12% of the total payments ($80,000/$85,000 = 94.12%). As this calculation results in payment of 100% of the amount sought by the insured, it "assures indemnification for the insured up to the maximum amount of coverage afforded by each policy." (Quotations omitted.) Id. Accordingly, Allstate's pro rata share should have been calculated to be $4,704, and Nationwide's pro rata share should have been calculated to be $75,296.
 {¶ 17} It is only through this formula that the goals stated inBuckeye are achieved. The insured remains fully compensated and liability is apportioned in a manner that does not violate the terms of either insurance policy. In this manner, neither company is required to pay their full exposure. Nationwide, while having coverage available up to $80,000, must only pay $75,296. Allstate, while having coverage available up to $5,000, must only pay $4,704. This results in both *Page 9 
policies paying 94% of their respective available coverage amounts. This is in stark contrast to the trial court's order which arbitrarily increased Allstate's maximum exposure under its contract from $5,000 to $16,000. Through that formula, Nationwide paid 80% of its maximum exposure ($64,000/$80,000), while Allstate was ordered to pay 320% of its maximum exposure ($16,000/$5,000).
 {¶ 18} In conflict with the above analysis, Nationwide has argued the result approved by this Court above is somehow inequitable. To support its argument, Nationwide has asserted that it is required to pay roughly 75% of its policy limit while Allstate is only required to pay 18% of its total policy limit. In this argument, Nationwide first ignores the disparity in premiums received by the respective companies due to the difference in their policy amounts. Furthermore, Nationwide has again ignored the impact of Ridgeway's receipt of $20,000 from the tortfeasor. This amount reduced Nationwide's total coverage amount available by 20%, while at the same time reducing Allstate's total coverage amount available by 80%. Simply stated, proportionally the effect of the setoff from the tortfeasor was much greater with respect to Allstate's policy.
 {¶ 19} There is little question that Nationwide received a higher premium than Allstate in exchange for offering substantially higher policy limits. As such, it would be inequitable to reward Nationwide a second time by permitting it to use total policy limits to establish pro rata shares. This approach would give *Page 10 
Nationwide the advantage of receiving higher premiums, while at the same time denying the advantage Allstate receives through the proportional effect of the setoff
 {¶ 20} As such, when a setoff has occurred, proportioning the parties' liabilities to their total policy limits is both illogical and inequitable. As the trial court's decision fails to fulfill the goals ofBuckeye, we find that it was erroneous. Accordingly, Allstate's sole assignment of error has merit.
 III {¶ 21} Allstate's sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 11 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
BETH WHITMORE FOR THE COURT
 SLABY, P. J. MOORE, J. CONCUR *Page 1